IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 1:22-cv-123-TFM-B |
| ) | |
| DAVID L. HARRELL, *et al.*, ) | |
| ) | |
|     Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is *SE Property Holdings, LLC's Motion to Enforce Compromise* (Doc. 107, filed 10/29/24). In its motion, SE Property Holdings , LLC ("Plaintiff" or "SEPH"), requests that the Court enforce a settlement agreement (the "Settlement") as to Defendant Carolyn Harrell ("Mrs. Harrell"), Defendant Southern Land Brokers, LLC ("SLB") (Mrs. Harrell and SLB, the "Defendants"), and Bell Hollow, LLC ("Bell Hollow"), a non-party to this litigation that executed the Settlement.[1] Defendants did not file a written response to the motion. The Court held a hearing on the matter on December 2, 2024. Having considered the Motion, oral arguments and evidence presented at the hearing, the Court issued an oral ruling announcing its findings and conclusions on December 3, 2024. *See* Doc. 128. Based on the evidence presented at the hearing and as stated on the record on December 3, 2024, the Court ordered that the motion was granted

---

[1] Defendant David L. Harrell ("Mr. Harrell") also executed the Settlement, but this case has been stayed as to him given that he is currently a debtor in a Chapter 7 bankruptcy proceeding. SEPH has filed a motion with the Bankruptcy Court to approve the Settlement as to Mr. Harrell, who testified at the Hearing that he did not object to the Settlement being enforced as to him. In this Order, Mr. Harrell, Mrs. Harrell, SLB, and Bell Hollow will sometimes be referred to collectively as the "Harrell Parties."

and that a written opinion would follow. This is that opinion.[2]

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The Court has personal jurisdiction over the claims in this action because the events that gave rise to this action occurred within this district. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. . . . General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims in this matter occurred in this judicial district.

---

[2] The Court had instructed SEPH to submit a draft opinion which was received on December 13, 2024. *See* Docs. 128, 131. However, after review, the Court determined that it was not sufficient for the intended robust ruling and merely repeated what the Court had already orally stated (as noted by the transcript) with no additional citation or analysis. As such, the Court drafted this opinion independent of that submission. This morning, after the Court had already finished its opinion, the Court received SEPH's notice of the bankruptcy court's ruling (Doc. 132) and therefore added to the opinion to incorporate that additional update and reference. The Court is aware that a revised draft opinion was submitted by email in the morning and then docketed pursuant to the Court's policy (*see* Doc. 133), but as the Court has already made its determination and finished its opinion, it was not considered or utilized. Additionally, the Court was made aware through its lead law clerk that several emails had been exchanged and the parties had been informed that the Court does not accept letter pleadings or debate. At this time, the Court declines to wait further on the release of this opinion as the parties had adequate opportunity to litigate at the hearing and after the first submission on December 13, 2024. The Court finds no need to wait on any further objections or responses since the Court already declined to utilize the draft opinions submitted.

## II. BACKGROUND

On April 25, 2024, the Court held a status conference to discuss the status of the case in light of the pending bankruptcy petition in the United States Bankruptcy Court for the Middle District of Alabama. *See* Doc. 77. The Court set an additional follow up conference for May 1, 2024. *See* Doc. 79. After these two status conferences, the Court determined it necessary to brief the issue about the impact of the bankruptcy stay on the overall case since the Court could not proceed against Defendant David Harrell ("Mr. Harrell"). *See* Doc. 83. After the Court received the parties' briefs (Docs. 88, 89), the Court determined on May 17, 2024, that the trial would be continued until after the Bankruptcy trial scheduled August 2024. *See* Docs. 90, 91. On September 3, 2024, the Court was made aware that the parties had reached a settlement in the bankruptcy proceedings during the trial proceedings and directed the parties to file a joint status report indicating how that settlement impacted the claims and counterclaims in this case. *See* Doc. 99. During that time frame, the parties' positions diverged as to whether there was in fact a global resolution of the cases. *See* Docs. 100, 101, 103, 104, 105, 106.

SEPH then filed the instant motion to enforce the compromise. *See* Doc. 107. The Court held the briefing on the motion in abeyance pending the upcoming pretrial conference. *See* Doc. 108. The Court noted that it had concerns regarding jurisdictional questions involving multiple courts over differing lawsuits, parties, and a non-party. *Id*.

At the pretrial conference on November 8, 2024, the Court discussed the posture of the case and informed the parties of its intention to proceed with a consolidated proceeding given the length of time this case has taken to resolve. The Court would first proceed with the motion to enforce compromise on December 2, 2024. If that motion did not resolve the case, the Court would proceed with a hearing on the partial motion for summary judgment and motion to strike

evidentiary materials. Finally, if needed, the Court would proceed to a jury trial on December 9, 2024. *See* Docs. 114, 120.

On December 2, 2024, the Court held an evidentiary hearing and oral arguments on the motion to enforce compromise. After reviewing the motion (Doc. 107) plus exhibits, hearing and reviewing the evidence presented (Doc. 129), and having oral arguments made by counsel, the Court issued its oral ruling on December 3, 2024. *See* Doc. 130. Put simply, the Court determined that the motion to enforce was due to be granted.

### III.  DISCUSSION AND ANALYSIS

"Federal courts possess certain inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citation and internal quotation marks omitted). One such "inherent power [is] to . . . enforce settlement agreements entered into by parties litigant in a pending case." *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir. 1967).[3] "A district court retains 'jurisdiction to enforce a settlement agreement when . . . a party claims a breach of the settlement agreement before the court has dismissed the action.'" *Szanto v. Bistritz*, 743 F. App'x 940, 942 (11th Cir. 2018)[4] (quoting *Kent v. Baker*, 815 F. 2d 1395, 1396 (11th Cir. 1987)). "Principles governing general contract law apply to interpret settlement agreements." *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) (citations omitted). "When

---

[3] *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981 as binding precedent in the Eleventh Circuit.

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

the facts material to the question whether a contract was formed are in dispute, the fact-finder must resolve that dispute." *Walker v. Walker*, 144 So. 3d 359, 364 (Ala. Civ. App. 2013) (citing *Sunnyland Mobile Homes, Inc. v. Thompson*, 384 So. 2d 1111 (Ala. Civ. App. 1980)). "However, when the facts material to the question whether a contract was formed are undisputed, the existence of a contract is a question of law for the court." *Id.* (citing *Denson v. Kirkpatrick Drilling Co.*, 144 So. 86, 91 (Ala. 1932)).

While general principles of contract law apply to the settlement agreement at issue, the Court will recite Alabama's substantive law as a reference. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1020 (11th Cir. 2014) ("*Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), commands that we apply the substantive law of Florida, the forum state, in this diversity action filed in the Southern District of Florida." (citing *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1212 (11th Cir. 2006)). "[T]he basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." *Sirote & Permutt, P.C. v. Caldwell*, 293 So. 3d 867, 873 (Ala. 2019) (citations omitted). "It is well settled that whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions." *SGB Const. Servs., Inc. v. Ray Sumlin Const. Co., Inc.*, 644 So. 2d 892, 895 (Ala. 1994). "Conduct of one party from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance." *Id.* (citing *Deeco, Inc. v. 3-M Co.*, 435 So. 2d 1260 (Ala. 1983)). "However, settlement agreements, like other agreements, are not valid when there has been no meeting of the minds with regard to the final terms of the agreement, . . . , or when the parties have merely agreed to later agree . . . ." *Grayson v. Hanson*, 843 So. 2d 146, 150-51 (Ala. 2002) (internal citations omitted).

Under Alabama law, whether the parties to a settlement had a meeting of the minds "sufficient to form a contract is judged by objective factors, not the subjective state of mind of a particular party" and depends on the "objective conduct" of the parties. *Alassmar v. City of Homewood*, Civ. Act. No. 2:10-CV-2100-TMP, 2012 WL 13026677, at *4-5[5] (N.D. Ala. Mar. 12, 2012) (citing *Allen v. Allen*, 903 So. 2d 835, 841 (Ala. Civ. App. 2004)). The Alabama Supreme Court has stated the following with regard to the phrase "meeting of the minds":

> Gonzales's argument is premised upon a misconception of the time-honored phrase 'meeting of the minds.' It is true that there is no contract unless the parties assent to the same thing and in the same sense. But if one seeks to convey his meaning by expressions importing something different, or attaches to the proposition of the other a significance not authorized, whatever injury may result from the misunderstanding must be visited upon him. *Thompson v. Ray*, 46 Ala. 224 (1871). Stated another way, the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach.
>
> Professor Corbin, in his treatise on contract law, speaks to the issue of mutual assent as follows:
>
>> "Agreement consists of mutual expressions; it does not consist of harmonious intentions or states of mind. . . . At present, however, what we observe for judicial purposes is the conduct of the parties. We observe this conduct and we describe it as the expression of a state of mind. It is by the conduct of two parties, by their bodily manifestations, that we must determine the existence of what is called agreement. That is what is meant by the anciently honored term 'meeting of the minds.' That is what is meant by mutual assent.
>>
>> "[One] may be 'bound' by a contract in ways that he did not intend, foresee, or understand. The juristic effect (the resulting legal relations) of a man's expressions in word or act may be very different from what he supposed it would be. . . . [B]ut it is of much greater importance to realize that the courts must determine the requirements of justice and that the legal effects thus given to expressions of agreement are seldom exactly what one or both of

---

[5] The Court did not find a citation available on Lexis Nexis as of the date of this opinion.

> the agreeing parties supposed or expected." A. Corbin, *Corbin on Contracts* § 9 (1952).
>
> . . .
>
> Where a contract is unambiguous and plain in expression, we know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair. Where the parties express without ambiguity their intention, no court can alter the agreement, and no room for judicial construction is left. *Springdale Gayfer's Store Co., supra*, citing *Lee v. Cochran*, 157 Ala. 311, 313, 47 So. 581 (1908).

*Lilley v. Gonzales*, 417 So. 2d 161, 163 (Ala. 1982).

"If a party to a [federal] suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement." *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981)[6] (citations omitted).

### A.  Carolyn Harrell and Southern Land Brokers LLC

The Court turns to the settlement as it relates to Mrs. Harrell and SLB. At the evidentiary hearing, the Court heard testimony from Mr. Harrell, Mrs. Harrell, and Mr. Anthony Bush ("Mr. Bush"), who is Mr. Harrell's bankruptcy counsel.[7,8]

Having heard the testimony of Mr. Harrell and Mrs. Harrell, the Court finds the testimony was not credible, and the Court has drawn negative inferences from their testimony.

The Settlement (which was admitted at the Hearing as Plaintiff's Exhibit 10) was entered

---

[6] *Fulgence* was decided by the Fifth Circuit after September 1981. Therefore, it is persuasive but not binding under *Bonner*, 661 F.2d 1206.

[7] Mr. Bush's testimony was directed and ordered by the Court, as the Court confirmed several times during the Hearing.

[8] The Court notes that because of the lack of jurisdiction over Bell Hollow that it makes no specific findings here, but that nothing presented caused the Court to doubt any of its findings with regards to the parties in this lawsuit.

by Plaintiff and the Harrell Parties as a result of arms-length negotiations that began only after the Harrell Parties (through Mr. Bush) approached Plaintiff (through Plaintiff's counsel) during a break in a trial in the related proceeding pending in the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court"). The Court found no breach in professional responsibility inasmuch as the parties negotiated at arm's length and in good faith.

The Settlement was executed by each of the Plaintiffs, Mr. Harrell, Mrs. Harrell, and SLB, without coercion or duress, and the Harrell Parties each understood the terms of the Settlement being executed. There is no evidence that any party executed the Settlement due to fraud, illegality, mistake, or any other possible grounds that would justify not enforcing the Settlement. The Court is tasked only with determining whether there was a valid contractual agreement reached between the parties, and the Court finds that there was such an agreement, including with respect to Mr. Harrell, Mrs. Harrell, and SLB.

The undisputed evidence established that Mr. Harrell entered the Settlement and does not object to its enforcement as to him. Additionally, the evidence established that Mrs. Harrell discussed the Settlement with her husband and her husband's counsel, Mr. Bush. While it is clear that Mrs. Harrell and SLB were represented by Mr. Whittelsey, the Court finds that she was an active participant in the negotiations though she may not have utilized Mr. Whittelsey in the manner in which he would have liked. As noted by the Court, clients sometimes do things that perhaps their lawyers might disagree with or counsel against. But, ultimately, lawyers do not own clients – the clients own the lawyers. And sometimes clients make decisions without their lawyers as Mrs. Harrell did here – whether that was wise or unwise.

What is clear is that Mrs. Harrell's testimony at the bankruptcy trial in the related adversary proceeding was devastating and called into serious doubt her credibility should she be called to

testify at any subsequent trial. In fact, the Court having reviewed the testimony, finds that her testimony then and now, to be charitable, are both less than candid until she is confronted with undeniable evidence that causes her to grudgingly tell the truth. After consultation with Mr. Bush, both Mr. Harrell and Mrs. Harrell decided to have Mr. Bush approach counsel for Plaintiff regarding settlement during a break in the trial after Mrs. Harrell's testimony concluded, in an attempt to resolve matters before they got any worse.

The Court finds that the terms of the Settlement are not unconscionable in any sense, as both Plaintiff and the Harrell Parties negotiated on several points and all parties gave up things during the course of those negotiations.

Mrs. Harrell and SLB's counsel, "Mr. Whittelsey" insinuated at the hearing that either counsel for SEPH or counsel for Mr. Harrell in the bankruptcy case, Mr. Bush, violated ethical duties during the negotiations but identified no evidence or law supporting this contention. In fact, the undisputed evidence at the Hearing established that: (1) counsel for Plaintiff communicated only with Mr. Bush; (2) Mr. Bush communicated with Defendants' counsel, Mr. Whittelsey, before the Settlement was finalized and executed; and (3) Mr. Bush provided Defendants with a copy of the Settlement such that Defendants could have provided their counsel with a copy. Any argument that the Settlement should be deemed unenforceable due to alleged ethical violations by counsel is hereby rejected as having no basis in fact or law.

Based on the foregoing, the Court finds not only that by a preponderance of the evidence, but also that beyond a reasonable doubt, the Settlement is an enforceable agreement between Plaintiff, Mrs. Harrell, and SLB. To quote the Eleventh Circuit, the Court "cannot allow a litigant to attack the integrity of the settlement process by attempting to recharacterize the focus of his litigation after he decides he is unhappy with the settlement." *Murchison v. Grand Cypress Hotel*

*Corp.*, 13 F.3d 1483, 1487 (11th Cir. 1994).

**B.     Bell Hollow LLC**

The Court now turns to a discussion as to Bell Hollow, LLC ("Bell Hollow"), a non-party to this litigation that executed the Settlement. With respect to Bell Hollow, Defendants' counsel implied at the Hearing that the Court may not have jurisdiction to enforce the Settlement as to Bell Hollow, a non-party. Notably, Defendants cited no law in support of this argument nor did he file any written objections or otherwise respond either as counsel for Mrs. Harrell, SLB, or Bell Hollow.

Plaintiff argues that Rule 71 of the Federal Rules of Civil Procedure permits a Court to enforce orders against a non-party. Rule 71 states, "When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." FED. R. CIV. P. 71. Plaintiff also cites to *Spotnana, Inc. v. Am. Talent Agency, Inc.*, Case No. 09-CV-3698(LAP), 2013 U.S. Dist. LEXIS 15208, at *8-9, 2013 WL 227546 (S.D.N.Y. Jan. 22, 2013). The Court finds that the case is not squarely on point and the reliance upon it may be misplaced.

The Eleventh Circuit has made it clear that "a district court has jurisdiction to enforce a settlement agreement . . . when one party refuses to abide by the agreement prior to dismissal [of the case]." *Kent v. Baker*, 815 F.2d 1395, 1399-1400 (11th Cir. 1987). This is not to say, however, that a district court has jurisdiction over a contract dispute involving non-parties, particularly where the settlement agreement does not contain a clause reserving jurisdiction. Since Bell Hollow is not a party to this action, the Court does not have direct subject matter or personal jurisdiction over it as a non-party and lacks the ability to enter a judgment that would be directly enforceable against Bell Hollow. *See, e.g. Castro v. Capital One Servs.*, Civ. Act. No. 8:16-cv-889, 2017 U.S.

Dist. LEXIS 223327, *3-4, 2017 WL 8809513 (M.D. Fla. June 8, 2017).

While that would often end the analysis as to a non-party, in this case, it is not quite that black and white. Rule 71 does provide some measure of relief, *in this instance*. The reason for that is because even if the Court's direct jurisdiction over Bell Hollow is lacking, the settlement is nevertheless enforceable <u>through</u> Mrs. Harrell (over whom jurisdiction is absolutely clear). In this case, Bell Hollow is wholly owned by Mrs. Harrell and represented by the same counsel as Mrs. Harrell and SLB. *See* Doc. 106 at 5, PageID.1630. The evidence at the hearing established without any doubt that Mrs. Harrell owns 100% of the membership interests in Bell Hollow, and Defendants did not dispute that the Court has jurisdiction over Mrs. Harrell and can order her to comply with the Settlement's terms. Therefore, the question of jurisdiction is a non-issue in this case because Bell Hollow can be compelled to comply through Mrs. Harrell.[9]

Therefore, while the Court cannot enter judgment as to Bell Hollow, the Court through its ancillary jurisdiction may enforce any issues as they arise involving Carolyn Harrell and a lack of compliance with this Court's order.

**C.  David L. Harrell**

As previously noted, Mr. Harrell is subject to the automatic stay pursuant to 11 U.S.C. § 362(a). *See* Doc. 43. On January 22, 2025, the Bankruptcy Court entered an order approving the Settlement and ordering SEPH and Mr. Harrell to comply with the Settlement's terms. *See* Doc. 132; *In re David Lynn Harrell*, Case No. 22-30877-CLH; *SE Property Holdings LLC v. David Lynn Harrell*, Adversary Proceeding No. 22-03028-CLH (M.D. Ala.). As such, it would appear

---

[9] Neither the Defendants nor Bell Hollow filed any written response to the motion to enforce. Bell Hollow did not seek to intervene despite its counsel's clear awareness of the motion and Bell Hollow's execution of the Settlement. Mr. Whittelsey also asked questions related to Bell Hollow's benefits under the Settlement which seemingly indicated that its interests were being represented at the hearing.

that the enforcement action is also resolved against Mr. Harrell in this case.

SEPH and David Harrell shall confer and file a joint status report regarding the status of this case, the automatic stay, and whether there are any matters that need resolution in this court or whether judgment may be entered as to this defendant as well.

### IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS in part** the *SE Property Holdings, LLC's Motion to Enforce Compromise* (Doc. 107) as it relates to Carolyn Harrell and Southern Land Brokers, LLC.  Defendant Carolyn Harrell and SLB are **ORDERED** to take any actions required of them under the Settlement to effectuate its terms.  The Court declines to enforce the action against Bell Hollow LLC for lack of jurisdiction, but retains jurisdiction to enforce the settlement terms through Carolyn Harrell.

SEPH and David Harrell are **DIRECTED** to file a joint status report regarding the status of this case as to this defendant on or before **February 7, 2025**.

The Court will enter Rule 58 judgment as to all its dispositive rulings to include this opinion against the parties once the case has reached its full conclusion.[10]

**DONE** and **ORDERED** this 23rd day of January 2025.

       s/Terry F. Moorer
       TERRY F. MOORER
       UNITED STATES DISTRICT JUDGE

---

[10] If the parties wish to pursue a partial certification of judgment, they may do so by filing a motion on or before **February 14, 2025**.  The motion must address the analysis raised in *Peden v. Stephens*, 50 F.4th 872 (11th Cir. 2022) and *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 722-23 (11th Cir. 2021) on the limited circumstances where partial judgment may be appropriate.